U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JUN 16 P 3:25

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CLERK
BY_____
DEPUTY CLERK

BRANDON LEE GRIFFITH,          )
                               )
        Plaintiff,             )
                               )
        v.                     )          Case No. 2:25-cv-724
                               )
ADAM PATTERSON, et al.,        )
                               )
        Defendants.            )

**OPINION AND ORDER**
**(Doc. 7)**

Plaintiff Brandon Lee Griffith—an individual who has been incarcerated in both Vermont

and New York—has brought this pro se action under 42 U.S.C. § 1983 against 12 Vermont

prison employees or personnel arising from events while Plaintiff was incarcerated in Vermont

in mid-2025.  He alleges excessive force; deliberate indifference to serious medical needs;

retaliation; placement in restrictive housing without due process; and failure to provide halal

meals in accordance with Muslim dietary requirements.  (*See* Doc. 8.)[1]  Screening Plaintiff's

complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), United States Magistrate Judge

Kevin Doyle issued a Report and Recommendation ("R&R") dated April 10, 2026,

recommending dismissal of all claims except for the excessive-force, deliberate-indifference-to-

---

[1] Plaintiff was incarcerated in New York before and after the time in mid-2025 that he
was incarcerated in Vermont.  He filed a pro se civil-rights action in 2016 regarding his
treatment while in custody in New York in 2013.  The district court in that case denied a defense
motion for summary judgment in 2024, *Griffith v. McNamara*, No. 16-CV-6730, 2024 WL
4118460 (E.D.N.Y. Sept. 9, 2024), and re-opened the case in July 2025 after dismissing it earlier
that year for failure to prosecute.  That case has settled.  Minute Order, *Griffith*, No. 16-CV-6730
(E.D.N.Y. June 11, 2026), ECF No. 201.

medical-needs, and retaliation claims. (Doc. 7 at 2.) No party has filed any objection or other response to the R&R.

## Background

The R&R summarizes the allegations in Plaintiff's complaint, organizing the allegations relevant to each claim. (Doc. 7 at 3–7.) The court finds no error in the R&R's recitation of the allegations. They are, in brief, as follows.

As to the deliberate-indifference claim, Plaintiff alleges that prison staff failed to provide him with his mental health medications for more than 30 days after he was transferred to Vermont's Northwest State Correctional Facility (NWSCF) on June 3, 2025. (Doc. 8 at 19.) Prison staff allegedly failed to provide the medications even though Plaintiff had filed numerous release and grievance forms. (*Id.* at 14.)

As to the excessive-force claim, the complaint alleges that after Plaintiff got into a "verbal altercation" with another inmate on June 25, 2025, prison staff used force against Plaintiff that included slamming him to the floor, pressing his face down and pressing a knee into his shoulder, applying restraints, using OC spray that caused an asthma attack, stripping his clothes from him, and taking actions that resulted in cuts to his genitals, ankles, and wrists. (*Id.* at 14, 19–21.) A special response team (SRT) entered Plaintiff's cell after he defecated on the floor and covered the cell window camera. (*Id.* at 20.) Plaintiff further alleges that SRT personnel touched his genitals and one officer painfully pressed a shield to the back of Plaintiff's knees. (*Id.*) Plaintiff's deliberate-indifference claim also includes allegations that prison staff failed to wash the OC spray off him for 48 hours and failed to treat his other injuries during that time. (*See id.* at 14, 20.)

2

The retaliation claim is based on events in July 2025 after Plaintiff sought help from a caseworker, defendant Justin Andrews, in pressing charges against officers who used force against him in June. Plaintiff alleges that two days after Mr. Andrews suggested that Plaintiff would "pay" for doing so, and after Plaintiff had filed a Prison Rape Elimination Act (PREA) complaint, corrections officers—including defendant Corrections Officer (CO) Hefferman— entered his cell at 2:00 a.m., threatened him, locked him in the shower while performing a cell search, took all his medical supplies, and placed him in restrictive housing. (*Id.* at 21.) Plaintiff then filed grievances, after which he was told that he was getting "shipped" to the Northern State Correctional Facility (NSCF), where the superintendent, defendant Amy Jacobs, would "continue to make my life miserable." (*Id.* at 21–22.) Once Plaintiff arrived at NSCF, he was placed in restrictive housing; when he objected, Superintendent Jacobs advised that she "did not care" and that Plaintiff was "in her house now and will pay for reporting a PREA on her friends at NWSCF." (*Id.* at 22.) Superintendent Jacobs ignored his request forms and his assertions that his classification points were "fabricated" to keep him in restrictive housing. (*Id.*)

Plaintiff's allegations regarding alleged unlawful placement in restrictive housing include assertions that such placement limited his access to outside recreation. (*Id.* at 14–16, 22–23.) He asserts that Superintendent Jacobs kept him in restrictive housing without any basis because he had not assaulted anyone while in custody; that he had no "behavioral infraction" justifying restrictive housing; and that he reported no suicidal ideation. (*Id.* at 22.) And Plaintiff maintains that he was kept in restrictive housing without a hearing; "without due process"; and even after a disciplinary infraction was overturned. (*Id.* at 15, 22.)

Regarding Plaintiff's claims about deprivation of halal meals, the complaint includes allegations that Plaintiff is a practicing Muslim and that, although he received halal meals at

3

NWSCF, the facility gave him the same menu every day: bread and hard-boiled eggs for breakfast, bread and celery for lunch, and a "My Own Meal" pre-prepared meal for dinner. (*Id.* at 23.)

## Standard of Review

Where a magistrate judge enters a recommended disposition on a dispositive motion, a district judge must determine "de novo" any part of the recommendation to which a party properly objects. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). "The court may adopt those portions of the [R&R] to which no objection is made as long as no clear error is apparent from the face of the record." *United States v. Shores*, No. 17-cr-00083, 2024 WL 489313, at *10 (D. Vt. Feb. 8, 2024) (alteration in original; quoting *Green v. Dep't of Educ. of City of N.Y.*, No. 18 Civ. 10817, 2020 WL 5814187, at *2 (S.D.N.Y. Sept. 30, 2020)). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Cullen*, 194 F.3d at 405.

## Analysis

### I.    Official-Capacity Claims

The complaint names all 12 defendants in both their individual and official capacities. (Doc. 8 at 2–3; 17–18.) Noting § 1983's "person" requirement and Eleventh Amendment immunity, the R&R recommends dismissal of Plaintiffs' claims for money damages against all defendants in their official capacities. (Doc. 7 at 9.) The court agrees with this analysis and adopts that recommendation.

4

## II.     Claims for Injunctive and Declaratory Relief

The complaint seeks injunctive and declaratory relief. (Doc. 8 at 5, 12–13.) Recognizing

that Plaintiff is no longer in Vermont Department of Corrections custody,[2] the R&R correctly

concludes that Plaintiff's claims for declaratory or injunctive relief against officials of the

Vermont facilities at issue are moot. (Doc. 7 at 10.)

## III.    Excessive-Force Claims

Applying the requisite plausibility standard and granting the liberal construction of

pleadings to which pro se filers are entitled (Doc. 7 at 8), the R&R accurately recites the

applicable Eighth Amendment standard (*id.* at 10) and describes the complaint as alleging

"serious and extensive" injuries inflicted upon Plaintiff while he was restrained and not

physically resisting. (*Id.* at 11.) For the reasons stated in the R&R, the court agrees that the

excessive-force claims cannot be dismissed at the screening stage.

## IV.    Deliberate Indifference to Serious Medical Needs

Similarly applying the applicable standards and Eighth Amendment principles, the R&R

reviews the deliberate-indifference claims as to both the alleged deprivation of medications and

the alleged failure to provide medical attention after incident of June 25, 2025. (Doc. 7 at 11–

---

[2] At the time he signed his complaint in August 2025, Plaintiff listed his custody status as "Other . . . fugitive from justice." (Doc. 8 at 4.) The Vermont Department of Corrections electronic locator indicates that Plaintiff's intake was on June 3, 2025, and he was released on September 11, 2025. *See* Offender Locator, https://www.vermont.gov/service/offender-locator (last visited May 22, 2026) (follow hyperlink to omsweb.public-safety-cloud.com URL, select type "all," and search for permanent ID 59199). New York's Department of Corrections and Community Supervision's website indicates that Plaintiff was taken into custody on December 12, 2025. *See* https://nysdoccslookup.doccs.ny.gov (DIN 25R3864) (last visited May 22, 2026). Records from Plaintiff's litigation in the Eastern District of New York indicate that he remains in NYSDOCCS custody. *See Griffith v. McNamara*, No. 16-CV-6730 (E.D.N.Y. Apr. 22, 2026), ECF No. 198 (Mr. Griffith's assertion that he was detained in Vermont as a "fugitive from justice" before being extradited back to New York).

14.) The R&R concludes that the allegations regarding refusal to provide Plaintiff with his long-standing medications for 30 days despite Plaintiff's numerous release forms and grievances are sufficient to state a plausible Eighth Amendment claim. (*Id.* at 13.) The R&R also concludes that failure to provide medical treatment after the use of force on June 25, 2025, and after the SRT's intervention, are sufficient for a plausible Eighth Amendment Claim. (*Id.* at 13–14.) The court agrees that these claims cannot be dismissed at the screening stage.

## V.    Retaliation

The R&R thoroughly reviews the retaliation claims under the applicable First Amendment law and procedural standards. (Doc. 7 at 14–18.) The three defendants against whom the First Amendment retaliation claims appear to be directed are Mr. Andrews, CO Hefferman, and Superintendent Jacobs. For the reasons stated in the R&R, Plaintiff's First Amendment retaliation claims against each of these defendants cannot be dismissed at the screening stage.

The complaint also refers to the Americans with Disabilities Act ("ADA") and the Rehabilitation ("Rehab") Act (Doc. 8 at 12), both of which apply to persons incarcerated in state prisons. *Davis v. Pallito*, No. 10-CV-154, 2011 WL 4443026, at *5 (D. Vt. June 16, 2011). In general, these laws prohibit discrimination against qualified individuals with disabilities. *See id.* at *7. The prohibition on discrimination includes failures to provide reasonable accommodation, as well as retaliation against individuals who engage in ADA-protected activity. *See id.* (describing disparate-treatment, disparate-impact, and reasonable-accommodation theories); *see also Lenti v. Connecticut*, No. 20-cv-127, 2020 WL 4275600, at *8, 11 (D. Conn. July 24, 2020) (retaliation is a form of discrimination covered by the ADA).

6

Here, the complaint includes allegations that would establish that Plaintiff has one or more disabilities. (*See* Doc. 8 at 19 (referencing depression, bipolar disorder, and a seizure disorder); *id.* at 20 (asserting that Plaintiff has a "severe diagnosis of mental disorder")). Plaintiff's complaint does not discuss or support theories of intentional discrimination, disparate impact, or failure to make a reasonable accommodation. The court therefore infers that the alleged discrimination at issue would be retaliatory conduct.

Critically, such a claim requires, among other things, that the plaintiff show that "he engaged in an activity protected by the ADA." *Lenti*, 2020 WL 4275600, at *11. Here, the alleged conduct that supports Plaintiff's First Amendment retaliation claims does not appear to be ADA-protected activity. Plaintiff alleges in his complaint that defendants retaliated against him for reporting or otherwise pressing charges against the COs who were involved in the events of June 25—not for complaining about ADA discrimination or requesting an accommodation. The court will therefore adopt the R&R's recommendation to dismiss the ADA and Rehab Act claims.

## VI.    Conditions of Confinement

The R&R analyzes a potential due process claim based on Plaintiff's placement in restrictive housing. (Doc. 7 at 18–20.) The R&R recommends that this claim be dismissed because "Plaintiff does not include allegations concerning whether the conditions he experienced in restrictive housing differed from the routine prison conditions at the institution where he was confined" and because his allegations about the process he received before being placed in restrictive housing are "minimal, contradictory, and vague." (*Id.* at 20.)

The court agrees that Plaintiff's allegations about his placement in restrictive housing lack sufficient detail to support a due process conditions-of-confinement claim. As noted in the

7

R&R, multiple factors are relevant to a substantive due process claim for conditions of confinement, including the extent to which the plaintiff's conditions differed from routine prison conditions, and the duration of the challenged conditions. (Doc. 7 at 19.) Here, the main difference in conditions is that Plaintiff's placement in restrictive housing limited his opportunities for recreation. Most critically, the challenged conditions appear to have lasted only for about a two-week period in July 2025. (*See* Doc. 8 at 22.) These allegations are insufficient. *See Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *21 (S.D.N.Y. Sept. 26, 2019) ("Absent a detailed factual record, courts typically affirm dismissals of due process claims where the period of time spent in [restrictive housing] was short—*e.g.*, thirty days—and there was no indication of unusual conditions." (alteration in original; quoting *Houston v. Cotter*, 7 F. Supp. 3d 283, 298 (E.D.N.Y. 2014))).

The procedural-due-process aspect of this claim rests on Plaintiff's contention that he was placed in restrictive housing without adequate notice and an opportunity be heard. (*See* Doc. 7 at 19 (citing *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017).) Plaintiff's allegation that he was placed in punitive segregation "without due process" is not adequate to support a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (insufficient to plead with "labels and conclusions"). Although Plaintiff alleges that he received "no hearing," (Doc. 8 at 22), a full hearing in this context is "not necessarily" required. *Proctor*, 846 F.3d at 609. Plaintiff's allegation that he "ask[ed] for witnesses" suggests that there was some process in connection with the decision to place him in restrictive housing. (Doc. 8 at 14.) And Superintendent Jacobs granted Plaintiff a face-to-face meeting on July 15, 2025. (*Id.* at 15.) For these reasons, the court agrees with and adopts the R&R's recommendation to dismiss Plaintiff's due process conditions-of-confinement claims.

## VII.   Claims Relating to Halal Meals

The court agrees with and adopts the R&R's conclusions as to potential constitutional claims arising from the alleged lack of variety in Plaintiff's halal meals. As to the First Amendment, the alleged lack of variety did not plausibly burden a sincerely held religious belief; Plaintiff was not required to deviate from his halal diet. The alleged lack of variety cannot support an Eighth Amendment violation. *Monroe v. County of Rockland*, No. 21 CV 5244, 2022 WL 2441118, at *3 (S.D.N.Y. July 5, 2022). And regarding the Fourteenth Amendment's Equal Protection Clause, Plaintiff does not allege that other practicing Muslims received a greater variety of halal meals than he did.

### Conclusion

For the reasons stated above, the Report and Recommendation (Doc. 7) is AFFIRMED, APPROVED, and ADOPTED. Plaintiff's excessive-force, deliberate-indifference-to-serious-medical-needs, and retaliation claims for money damages against defendants in their individual capacities survive screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). No other plausible claims are discernable in the complaint, and all such remaining claims are DISMISSED.

The court reminds Plaintiff to adhere to the "Instructions to Litigant" as stated in the R&R. (Doc. 7 at 21–22.) Service upon the defendants for the remaining claims shall proceed as specified in the R&R. (*Id.* at 23.)

Dated at Burlington, in the District of Vermont, this 16th day of June, 2026.

Geoffrey W. Crawford, Judge
United States District Court

9